[Barbour v. Cantrell.]

# Barbour v. Cantrell.

*Assumpsit.*

(Decided May 20, 1915.   69 South: 67.)

1. *Contracts; Jury Question.*—Where the defendant claimed that the contract was embraced in a letter written by defendant to plaintiff and another, and the plaintiff claimed that the contract was oral, the question became one for the jury to determine.

2. *Evidence; Best and Secondary.*—Where a contract for the sale of stock subscription was in writing the contract was the best evidence of its terms, and parol evidence was not admissible to establish it.

3. *Brokers; Compensation; Right to.*—Where the action was for commissions for effecting the sale of corporate stock, and plaintiff claimed that he sold the stock for the defendant under an oral contract, and defendant claimed that the contract was a written one made with the firm of which he was a member, evidence that plaintiff's alleged partner knew of defendant's transfer of the stock subscription prior to the sale, offered to show that plaintiff should recover his commission from the then holder, was immaterial.

4. *Evidence; Conclusion.*—Testimony that the alleged partner of plaintiff knew of the transfer of his stock subscription to another is the conclusion of the witness, and inadmissible, and cannot defeat plaintiff's action for compensation for effecting the sale.

5. *Charge of Court; Directing Verdict.*—Where there is a material conflict in the evidence, the affirmative charge should not be given.

6. *Same; Undue Prominence.*—Charges which ignore material facts in evidence, or give undue prominence to particular phases of the evidence, or which are likely to confuse the jury should be refused.

7. *Brokers; Compensation.*—Where defendant had a stock subscription and offered to pay plaintiff an agreed commission in case he effected a sale of the stock, but defendant transferred the stock to a third person before the sale was, effected, plaintiff having effected a sale was entitled to collect his commission from defendant.

8. *Same.*—Although the agreement provided that the seller should secure enough cash with which to pay his commission, yet where the owner ratified a sale in which sufficient cash was not obtained with which to pay the commission he was liable for the commission.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN C. PUGH.

Assumpsit by E. F. Cantrell against Ben F. Barbour. Judgment for plaintiff, and defendant appeals. Affirmed.

[Barbour v. Cantrell.]

Transferred from the Court of Appeals under section 6, Act April 18, 1911 (Gen. Acts 1911, p. 450).

The suit was for 25 per cent. commission on the sale of $1,000 of stock of the Great Southern Accident & Fidelity Company, which stock was alleged to have been sold by plaintiff under a contract or agreement made between plaintiff and defendant, and that the stock was sold for and on account of defendant. The letter referred to notes the sale of the stock, and the fact that the stock was sold for a certificate of deposit which did not bear interest, and an offer was made in said letter to settle with Cantrell, either by note payable when the certificate of stock was paid, or to secure from the Atlanta office the commission and pay it in cash as soon as Barbour could go to the Atlanta office and make the arrangements. There were other letters addressed to Messrs. Floyd and Walter Cantrell, signed by Cantrell & Chipley, per Ben F. Barbour, secretary and treasurer, authorizing the sale of this stock for cash, or its equivalent in time deposit certificates on good and substantially rated banks at a commission of 25 per cent. on all stock sold. The letter above referred to, however, relative to the payment of the commission, was addressed to E. F. Cantrell. E. F. Cantrell replied, stating that the agreement was with Barbour, and not with the Commonwealth Investment Company, and that he would look to Barbour personally for settlement. The letter also agreed to the terms proposed, with the exception that Cantrell desired interest for the time he has been out of the use of his money. The oral charge of the court excepted to is as follows: If Barbour had a subscription contract with the Great Southern Accident & Fidelity Company, and made an agreement with plaintiff to sell said

stock on a commission basis, and plaintiff afterwards sold said stock, Barbour would be liable for the full amount of this commission, although he (Barbour) prior to said sale of said stock by plaintiff had sold and transferred his subscription contract, and plaintiff had no knowledge or notice that Barbour had sold his entire interest in said stock prior to Cantrell's sale of same on his alleged contract with Barbour, E. F. Cantrell would be entitled to the full commission under the contract with Barbour, and would have a right to recover the same upon the sale of stock by him, although plaintiff did not raise enough cash in the sale to take care of the commission, and although he turned the certificate of deposit representing the entire proceeds of said sale over to Dr. Duvall, as treasurer of said company, if you are reasonably satisfied from the evidence that plaintiff complied with the contract between him and defendant, if you believe there was a contract for sale of stock between them. If defendant made a contract with plaintiff to sell stock in said company, defendant would be liable for a commission on said sale notwithstanding defendant had sold his rights and privileges of selling said stock to a third person if without notice to plaintiff prior to the sale of stock by him. Knowledge on the part of Walter Cantrell would not release defendant from liability to plaintiff for commission although plaintiff made said sale after said transfer.

The written charges assert the proposition, in effect, that if plaintiff in selling the stock was to reserve or collect in cash the amount of his commission, and did not do so, there should be a verdict for defendant.

JOEL F. WEBB, for appellant.

[Barbour v. Cantrell.]

JOSEPH T. COLLINS, JR., for appellee.

THOMAS, J.—This is an action in assumpsit, brought by E. F. Cantrell, appellee, against Ben F. Barbour, appellant. The subject-matter of the action was the commission on the sale of certain insurance stock. The case was tried before a jury, and a verdict was returned for the amount claimed, and judgment was rendered accordingly.

The plaintiff claimed that the defendant, Barbour, contracted orally with him, in May 1910, to sell the stock in question, said oral contract being confirmed by a letter of the same date, addressed to "Mr. Floyd and Walter Cantrell," Floyd Cantrell being the plaintiff, and Walter Cantrell being his brother. The letter stated that the Cantrells were to secure sufficient cash money in the sale to pay the commissions.; this not having been mentioned in the oral contract with plaintiff, so far as is shown by plaintiff's testimony, which was evidently accepted by the jury. Furthermore a letter from defendant to plaintiff, written after plaintiff had made the sale, made no reference to this, though admitting the sale by plaintiff and undertaking to arrange for the payment of the commission. This letter informed plaintiff that a third party, and not defendant, was plaintiff's debtor, which suggestion was promptly repudiated by plaintiff in a letter to defendant.

(1) The defendant contended that the letter to Floyd and Walter Cantrell was the only contract made with the plaintiff and Walter Cantrell jointly, they being partners. This contention was denied by the plaintiff, and the question became one for the jury.

(2) The defendant further contended that after the making of said contract, and prior to any sale of stock

by plaintiff, the defendant, together with Walter Cantrell and others, organized an investment company, a corporation, to which defendant transferred the insurance stock subscription held by him. The defendant offered to testify to the making of said transfer, but, it appearing that the contract of sale was in writing, the court properly sustained the objection to the proffered secondary evidence.

(3, 4) The defendant offered to prove, by his own testimony, Walter Cantrell's knowledge of the sale to the corporation of said stock subscription, but the court properly sustained the objection that said testimony was immaterial, and was the mere conclusion of the witness.

Defendant testified that Floyd and Walter Cantrell were partners at the time the defendant's contract was made with them, but this was denied by the plaintiff. Defendant was then asked if he did not tell Walter Cantrell, of the firm of Floyd and Walter Cantrell, that he had transferred the contract to sell the insurance stock to the investment company prior to the sale of any stock by the plaintiff. The court properly sustained the objection that this was immaterial, and that there was no evidence before the court of defendant's transfer to said investment company.

(5) Defendant's request for the general affirmative charge was properly refused. There was material conflict in the evidence.—*Tobler v. Pioneer Mining Co.,* 166 Ala. 517, 52 South. 86.

(6) The court properly refused to give written charges requested by the defendant. The charges ignored material portions of the evidence, singled out and gave undue prominence to particular phases of the testimony, and were likely to confuse the jury.—*McVay*

[Barbour v. Cantrell.]

*v. White,* 158 Ala. 182, 48 South. 344; *Birmingham Ry., Light & Water Power Co. v. Lee,* 153 Ala. 386, 45 South. 164.

(7) We have carefully considered the several assignments of error directed to the oral charge of the court, but discover no reversible error therein. The sale of his subscription contract by Barbour to the investment company, without notice or knowledge by the plaintiff, assuredly would not affect the contract between plaintiff and defendant.

(8) The court's instruction that plaintiff would have the right to recover although the sale by him was not for sufficient cash money to pay his commission, was without error, in the light of the evidence showing that Barbour knew of the sale, acquiesced in its terms, and admitted plaintiff's right to his commission. Under the evidence adduced, Walter Cantrell's knowledge of defendant's sale to the investment company would not affect plaintiff's right to a recovery. However, the testimony offered to prove said sale, as well as Walter Cantrell's knowledge thereof, had been properly excluded.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.