# Lewy Art Co. v. Agricola.

## Damages for Personal Injury.

(Decided Feb. 1, 1910.   Rehearing denied June 30, 1910.
53 South. 145.)

1. *Landlord and Tenant; Condition of Building; Injury to Stranger.*—Where an awning in front of a store occupied by a tenant was in such a decayed condition as to endanger pedestrians, and this fact was known to the tenant, he would be responsible in damages to one injured as a proximate consequence of the decayed condition of the awning upon the theory of the maintenance of a nuisance and this is true irrespective of the liability of the landlord.

2. *Same; Injury to Third Person; Liability.*—Where an awning in front of a store was there when a tenant entered into its occupancy and was in a decayed and dangerous condition the tenant owed the public using the sidewalk the duty not to maintain it or allow it to remain in such a condition after becoming aware of the condition.

3. *Nuisance; Pleading.*—Where a complaint for injury proceeds on the theory of the maintenance of a nuisance an allegation of negligence is not necessary.

4. *Same; Sidewalk Awnings; Evidence.*—Where the action was for injury to pedestrians from a defective awning, evidence as to the condition of the awning two days after the accident was admissible where the conditions were shown to be the same then as at the time of the accident.

5. *Same; Jury Question.*—Under the evidence in this case it was a question for the jury as to whether defendant knew of the dilapidated condition of the awning and knew of it for a sufficient length of time before the accident occurred to have had it remedied.

6. *Same; Condition of Building.*—Where a pedestrian was injured by the falling of an awning in front of a store occupied by the defendant, while an attempt was being made to lower or hoist it, it

[Lewy Art Co. v. Agricola.]

was negligence, if the awning was in a decayed condition, and on that account fell, and the defendant had knowledge of its condition.

7. *Same; Instructions.*—Where the action was for injuries to a pedestrian from the falling of an awning in front of the store occupied by the defendant, and the complaint alleged that the defendant so negligently conducted itself in regard to the awning that the same fell upon the plaintiff, a charge asserting that the complaint charged negligence in causing the awning to fall, and that no recovery could be had because of its rotten condition, was properly refused.

8. *Same.*—Where the action was for injuries to a pedestrian by the falling of an awning in front of the store occupied by the defendant and the plaintiff testified that at the time of the accident, a negro was working with the awning, a charge asserting that if the negro was not the agent of the defendant, the plaintiff could not recover, was properly refused as misleading, for not coupling the alternative that the negro was a servant.

9. *Negligence; What Constitutes.*—Negligence may consist in the omission to act as well as in acting.

10. *Trial; Objections to Evidence; Time.*—A party cannot experiment upon what the answer of a witness will be and insist upon having the answer excluded, if he failed to object to the question.

11. *Master and Servant; Jury Question.*—Where the action was for injury to a pedestrian for the falling of an awning in front of the store occupied by the defendant and the plaintiff testified that at the time of the accident a negro was working with the awning, it was a question for the jury as to whether or not the defendant was responsible for the act of the negro.

12. *Evidence; Res Gestae; Expression of Pain.*—Where the action is for injury, a witness may properly testify that the plaintiff's face was swollen and she complained of suffering.

13. *Same.*—Where the action was for injury to a pedestrian by the falling of an awning, the fact that a man was working with the awning at the time it fell, was admissible as of the res gestae.

14. *Bill of Exceptions; Construction.*—A bill of exceptions is always construed most strongly against the party excepting.

15. *Charges of Court; Reference to Pleading.*—Charges should not refer the jury to the pleadings to determine what the issues are.

16. *Master and Servant; Pleadings; Evidence.*—Where a count is in case for injury, the acts or omissions of the servants of the defendant are admissible.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by Selma Agricola against the Lewy Art Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

The first count in the complaint, as amended, is as follows: "Plaintiff claims of the defendant $5,000 as damages, for that heretofore, to wit, on the 7th day of November, 1907, defendant was conducting a store abutting on Nineteenth street, and was in charge and control of an awning, and the frame thereof over the public street on which said store abutted, to wit, the sidewalk on the west side of Nineteenth street, between Third and Fourth avenues, in Birmingham, Ala.; that defendant so negligently conducted itself in that regard that as a proximate consequence of such negligence, on said day, while plaintiff was upon said public highway, to wit, upon said sidewalk, said awning or frame, or part thereof, fell upon or against plaintiff, and as a proximate consequence thereof plaintiff's nose, face, head, and various parts of her body were injured, etc. (Here follows catalogue of injuries and damages.) Plaintiff avers that said awning frame, or a part thereof, fell upon or against her as aforesaid, and she suffered said injuries and damages by reason, and as a proximate consequence, of the negligence of the defendant."

The following charges were given for the plaintiff: (1) Set out in the opinion. (2) "If an awning is used to shade the entrance to a storeroom, and that awning is used for no other purpose, and projects over a public street immediately in front of the storeroom, then the tenant of the storehouse conducting business therein must use due care and diligence to see that the awning does not become ruinous and dangerous to the public passing along the street, while the awning is projecting over the street, and used for the benefit of the store, or for the benefit of the tenant, provided the same is done with the knowledge and acquiescence of the tenants."

The following charges were refused to the defendant: (2) "The court charges the jury that, if they believe

the evidence in this case, they must find for the defendant on the first count of the complaint." (8) "The court charges the jury 'that the undisputed evidence in this case shows that the contract of lease is made between C. H. Nabb as lessor and L. Steiner and Dora. C. Lewy, as lessees." (M) "If the jury believe from the evidence that the negro who was working with the awning was not the agent of the defendant, then plaintiff cannot recover." (F) "If you believe that the injury was caused by reason of negligence in maintaining a rotten awning, plaintiff cannot recover on the first count." (D) "Before the plaintiff can recover, you must be reasonably satisfied from the evidence that the awning was caused to fall by the negilgence of the negro man, and that the negro man was in the service or employment of the defendant, or acting under the direction of the defendant." (G) "The complaint charges negligence of the defendant in causing the awning to fall. The undisputed evidence shows that the awning fell because of, and as a proximate consequence of, the rotten condition of the awning. This constitutes a variance. The complaint does not charge the defendant negligently maintained a rotten awning, but charges negligence in causing it to fall. You must therefore, find for the defendant."

JOHN H. MILLER, W. H. WOLVERTON, and STEINER, CRUM & WEIL, for appellant. The demurrer's to count 1 should have been sustained.—*Johnson v. B. R. L. & P. Co.*, 149 Ala. 529; *Mont. L. & W. P. Co. v. Citizens L. H. & P.* Co., 147 Ala. 359; *Birmingham R. L. & P. Co. v. Oden & Co.*, 146 Ala. 495. The court erred in admitting testimony as to the condition of the awning two days after the accident occurred.—*B. U. Ry. Co. v. Alexander*, 93 Ala. 133; *M. & A. of*

[Lewy Art Co. v. Agricola.]

*B'ham v. Starr,* 112 Ala. 107; *Davis v. Alex. City,* 137 Ala. 210; 4 S. W. 389; 3 S. W. 808; 6 Cush. 397; 1 Greenl., secs. 52 and 448. The court erred in permitting the landlord to testify that he did not exercise any control over the awning in question or any part of the premises leased to the defendant.—*Drennan v. Satterfield,* 119 Ala. 85; 1 Greenl. 373. Under the undisputed evidence in this case as to the condition of the pole the liability was that of the landlord and not that of the tenant.—*Morgan v. Shepherd,* 47 So. 148.. The admission that the defendant had used the awning six or eight times, made by its president, was not binding upon the defendant.—*L. & N. R. R. Co. v. Carl.* 91 Ala. 270; *Steen v. Sanders,* 116 Ala. 160. Counsel discuss motion for a new trial, but without citation of authority. They insist that the court erred in giving charge 12.—24 Cyc. 1125; 13 Metc. 292. The negro working with the awning was an intruder, and the defendant was not liable for his acts.—*Platt v. Forney,* 16 Ill. 216. The court erred in giving charges 12a and 13.—158 Mass. 292; 126 Mass. 374; Jones on Landlord & Tenant, 711. Counsel discuss other charges given and refused, but without other citation of authority.

BOWMAN, HARSH & BEDDOW, for appellee. The complaint was sufficient.—*Leech v. Bush,* 57 Ala. 154; *L. & N. v. Marbury L. Co.,* 125 Ala. 237; *So. Ry. Co. v. Burgess,* 143 Ala. 364; *B. R. L. & P. Co. v. Haggard,* 46 So. 519. The court did not err relative to the admission of evidence as to the condition of the awning after the accident. In the first place, the question was not objected to.—*Washington v. The State,* 106 Ala. 58; *Downey v. The State.* 115 Ala. 111. In the next place, there was evidence tending to show that the condition was the same as at the time of the accident.—*Jackson L. Co. v.*

*Cunningham,* 141 Ala. 213. Counsel discuss other errors of assignment insisted upon, but without citation of authority.

EVANS, J.—The defendant corporation "conducted" a store on Nineteenth street, in the city of Birmingham. There was attached to the store, in front, an awning that extended over the sidewalk. While the plaintiff was walking along the sidewalk, on the 7th of November, 1907, the "awning or frame or a part thereof" fell upon and painfully and permanently injured her. Hence this suit. The trial in the city court resulted in verdict and judgment for the plaintiff in the sum of $1,000, and the defendant has appealed.

The defendant was not the owner of the store nor of the awning, but merely occupied the store as a tenant, under a lease that began on the 1st of October, 1907, so that such occupancy of said store by the defendant, at the time plaintiff received the injury, was a matter of hardly more than five weeks' duration.

The testimony in respect to the construction of the awning and to its condition is brief, and we quote that of three witnesses:

Frank Lewis testified: "On November 9, 1907, two days after the accident occurred, I examined the awning in front of defendant's place of business on Nineteenth street, in the city of Birmingham. The pole to which the awning was nailed was rotted for a distance of several inches from the end, in such a way as to release an iron rod, a part of the frame, that passed through a hole in the pole near this end. The pole had been wrapped with a twine string when I saw it."

J. M. Tuck testified: "The pole to which the awning was nailed was badly decayed. The hole where the iron rod went in was rotted away, and the pole and rod were

[Lewy Art Co. v. Agricola.]

tied with a twine string. The iron of the awning frame was round, about seven-eighths of an inch in diameter, and the wooden pole was about two inches square. The awning was not in front of any other part of the building except that used by the Lewy Art Company. It would have taken at least two years for this awning to have gotten in this condition. It was immediately in front of the store of the defendant."

A. A. Vines testified: "I examined the awning on the 9th day of November, 1907, at the time the wooden pole to which the awning was nailed was rotted at the end. The wood was rotted around the hole in such a way as to release the iron rod. The pole was wrapped with pieces of twine string at the time. It was not connected with the iron rod when I saw it. This rotten condition of the awning was where it could be easily seen from the doorway of the Lewy Art Company's store."

In respect to the accident, plaintiff was the only witness. She testified: "I was hurt about 3 o'clock in the afternoon as I was passing along the public sidewalk on Nineteenth street in Birmingham, Ala., in front of the Lewy Art Company's store. I saw a negro man working with the awning in front of their store, letting it down or drawing it up, I could not tell which. An iron rod, a part of the awning, fell and hit me across the nose and broke it. It knocked me against the wall and injured my left side."

Nabb, a witness for plaintiff, testified that the president of the defendant told him that "they" had used the awning prior to the accident six or eight times since "they" came into the store.

The president of the defendant testified, substantially, that the defendant did not construct the awning and had nothing to do with constructing it; that the defend-

ant had never used the awning and had no use for it; that defendant never employed a negro man nor any one else to let the awning up or down; that defendant never employed any one who had control of the awning or who had authority to let it up or down; that she had entire control of the store and of the employment of agents and servants for the company. "I had no negro man in the employment of the company on the day the accident occurred. No one else had authority to do so. We never had any negro man in the employ of the defendant company. The room in which we have our store is a part of the Hillman Hotel building. The awning was up when we went in, and we never had it lowered. If any negro man was working with this awning when it fell, he was without authority to do so. The defendant was doing business in, and had exclusive control of, the store in front of which the plaintiff was hurt." On cross-examination she testified: "I never noticed the awning during the time we had been in the store, as we never had occasion to use it. I never told Mr. Nabb that we had used the awning. We did occasionally have a negro man who swept out our store and do other work for the company occasionally inside the store."

The secretary of the defendant testified that defendant had been in the store four or five weeks at the time the accident occurred. "We had never used the awning, and I had never noticed that it was there. We did not have any negro man in the employ of the company on the day that this accident occurred.

Miss Lewy, another witness for the defendant, testified that: "On the day the accident occurred there was no negro man working for the defendant. I do not work in the store and only go down there occasionally. I just happened to be there the day the accident occurred."

The cause was submitted to the jury on the first count of the complaint as amended; all the others having been withdrawn. This count is predicated upon negligence of the defendant. The demurrer to the first count as amended takes the point, first, that the count defines no duty that defendant owed to the plaintiff. If the awning was in a decayed condition, so as to be a menace to the safety of pedestrians using the sidewalks, and such condition was known to the defendant, it would be responsible in damages to any one injured as a proximate consequence of the decayed condition of the awning, upon the theory of the maintenance of a nuisance, notwithstanding defendant was only a tenant of the premises, and irrespective of the liability of the landlord.—18 Am. & Eng. Ency. Law, p. 257; *Crommelin v. Coxe & Co.,* 30 Ala. 318, 68 Am. Dec. 145; *City of Peoria v. Simpson,* 110 Ill. 294, 51 Am. Rep. 683; *Kalis v. Shattuck,* 69 Cal. 593, 11 Pac. 346, 58 Am. Rep. 568; *Riley v. Simpson,* 83 Cal. 217, 23 Pac. 293, 7 L. R. A. 622; *Ahern v. Steele,* 115 N. Y. 203, 22 N. E. 193, 5 L. R. A. 449, 12 Am. St. Rep. 778; *Timlin v. Standard Oil Co.,* 126 N. Y. 514, 27 N. E. 786, 22 Am. St. Rep. 845. And if the complaint had proceeded upon the theory that the awning was a nuisance, there would have been no necessity for allegations of negligence.—14 Ency. Pl. & Pr. 1114. But this theory does not prevent a recovery on the theory of negligence on the part of the defendant, and a complaint might be framed in that·view.

Returning to the point that the complaint fails to show any duty on the part of defendant to plaintiff, the complaint in this respect shows that the defendant "was conducting a store abutting on Nineteenth street, and was in charge or control of an awning and the frame thereof over the public street on which the said

store abutted, to wit, the sidewalk on the west side of Nineteenth street."

From these averments, and in view of the proposition above laid down and of the authorities cited in support of it, the law not only implies, but fixes, the duty upon the defendant of exercising that degree of care required of reasonably prudent persons, under similar circumstances, to maintain the awning in a reasonably safe condition, so that it will not fall and injure pedestrians. This being true, the point of no duty shown by the complaint is without merit. And as was said in the leading case of *Leach v. Bush,* 57 Ala. 145, 154: "When the gravamen of the action is the alleged nonfeasance or misfeasance of another, as a general rule, it is sufficient if the complaint aver facts out of which the duty to act springs, and that the defendant negligently failed to do and perform, etc.; it is not necessary to define the quo modo, or to specify the particular acts of diligence he should have employed in the performance of such duty." The rationale of this decision is then stated in the opinion thus: "What the defendant did, and how he did it, and what he failed to do, are generally better known to the defendant than to the plaintiff; and hence it is that in such cases a general form of averment is sufficient."— citing 1 Chitt. Pl. 336. This case has been many times reaffirmed and followed by this court, so that the principle of general averment in negligence cases, decided therein, is too well established and grounded in our law of procedure to be now uprooted. Measured by the standard there laid down, it is obvious that the complaint here, in respect to its averments of negligence, is free from legitimate criticism.

It follows that the demurrer to the complaint as amended was properly overruled.

Even if the rulings of the court on the admissibility of evidence in respect to the condition of the awning were presented by the bill of exceptions in legal form, so as to require review of them (*Washington's Case,* 106 Ala. 58, 17 South. 546; *Downey's Case,* 115 Ala. 108, 111, 22 South. 479, second paragraph of the opinion), yet we think it is reasonably certain—if not absolutely true—that the decayed condition of the awning was the ·same two days after the accident as it was when the accident occurred; and under such circumstances, according to our previous decisions, the court properly allowed the proof in respect of ·the conditions obtaining two days subsequent to the accident (*Jackson Lumber Co. v. Cunningham,* 141 Ala. 296, 37 South. 445).

The court properly permitted witness Couch to testify that the plaintiff's "face was badly swollen and she gave expressions of suffering."—*Birmingham, etc., Co. v. Enslen,* 144 Ala. 343, 349, 39 South. 74.

It is immaterial to the admissibility of the plaintiff's testimony in respect to seeing a negro man endeavoring to roll up or roll down the awning that it should be shown that the man was in the employment or service of the defendant at the time. The fact that he was working with the awning, at the time it fell, was a part of the res gestae, and was clearly admissible. Of course, to render defendant liable for the negro's act, if negligent, the relation of agent and principal, or of master and servant, should be shown.

It is said in this connection, in appellant's brief, that the complaint contained no count in case; in other words, that the count charges corporate negligence, and does not ascribe negligence to the servants. The count is undoubtedly in case, for consequential damages, and, under its allegations, acts or omissions of servants

might be properly admitted as evidence.—*Birmingham,
etc., Co. v. Moore,* 148 Ala. 115, 126, 127, 42 South. 1064,
and cases there cited.

The ninth assignment of error relates to the refusal
of the court to exclude the plaintiff's testimony. This
assignment is argued in the brief, upon the theory last
above mentioned, i. e., upon the theory that the com-
plaint charges only corporate negligence.

For the reasons above assigned, in respect to the doc-
trine of res gestae, as well as those pertaining to cor-
porate negligence, it must be held that said assignment
is unavailing to reverse the judgment.

The appellant can take nothing on account of the
matter covered by the tenth ground in the assignment
of errors. There was no objection to questions calling
for the testimony of Nabb, nor was there any motion
to exclude his testimony. All that the bill of exceptions
shows is that "defendant objected to the testimony on
the grounds the written lease was the best evidence of
the facts." Taking the bill of exceptions most strongly
against the party excepting (*McGehee's Case,* 52 Ala.
224), we presume that the testimony objected to was
given in answer to questions propounded in regular
course of examination of the witness. A party cannot
experiment upon an answer to a question's being favor-
able to him, reserving his objection until it appears that
it is unfavorable, and then insist upon having the
answer excluded.—*McCallman's Case,* 96 Ala. 98, 11
South. 408; *Billingsley's Case,* 96 Ala. 126, 11 South.
409; *Traylor's Case,* 100 Ala. 142, 14 South. 634; *Payne
v. Long,* 121 Ala. 385, 391, 392, 25 South. 780; *West
Pratt C. Co. v. Andrews,* 150 Ala. 368, 376, 43 South.
348.

The only plea in the case was not guilty, and the court
at the written request of the plaintiff charged the jury

as follows: "If the jury are reasonably satisfied from the evidence that plaintiff's first count is true, then the jury must find for the plaintiff." This charge manifestly referred the jury to the pleadings to determine what the issues were, and, while the giving of such charges may not constitute reversible error, yet we have on former occasions said that they are confusing and should not be given.—*Woodward Iron Co. v. Curl*, 153 Ala. 215, 228, 44 South. 939. The appellant argues against the soundness of the charge, however, upon the theory that (quoting the brief) "the accident is clearly shown to have been caused by the negro man's working with the awning. This was an independent, intervening cause. The defendant did not construct the awning. It had been there two or three years before the defendant began its occupancy of the store, and defendant had been in the store only five weeks when the accident occurred."

This argument, we should state, is grounded, in the first place, upon the idea that under the complaint acts of servants or agents are not admissible; in short, that there is no foundation for the doctrine of respondeat superior under the complaint. We have already shown the fallacy of this position. We have shown that it is not indispensable to plaintiff's right of recovery that the evidence should show that defendant constructed the awning; but that, if it was there in a decayed and dangerous condition when the defendant entered into the occupancy of the store, then defendant owed the duty to the public using the sidewalk not to maintain it or allow it to remain in such a condition, after becoming cognizant of its decayed condition. The testimony here shows that the awning was in a state of decay; that defandant's occupancy of the store had continued for a period of five weeks; and that the decayed condition of the

awning was in plain view and could be easily seen by a person in the door of the store. Besides, there is testimony of admissions of the president of the defendant company (though she denies it) to the effect that defendant had used the awning six or eight times. From this state of the proof it belonged to the jury to determine whether the defendant knew of the dilapidated condition of the awning, and knew of it for a sufficient length of time, before the accident occurred, to have had it remedied. These questions being determined against the defendant, actionable negligence would be shown provided it was the proximate cause of the injury, because the defendant would be responsible for all the results which might have been reasonably foreseen or anticipated as probable. And we doubt not—assuming for the present that the "negro man" was the servant of the defendant—that the falling of the awning might have been anticipated as a result of attempting to roll it up or down, in its condition as disclosed by the evidence.—*McDonald v. Snelling,* 14 Allen (Mass.) 290, 92 Am. Dec. 768; *Stone v. Boston, etc., Co.,* 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794.

So far as the responsibility of the defendant for the act of the negro man is concerned, that was a jury question. While the president of the defendant testified that he was not in the employ of the defendant, and she was corroborated in this statement by two other witnesses, still it was admitted that a negro man was employed occasionally to sweep the store and do other work "inside" the store. The jury were not bound absolutely to find from the testimony that the "negro man" was not the servant of the defendant, to the exclusion of legitimate, reasonable inferences afforded by the evidence to the contrary. If the defendant used the awning (and the testimony affords an inference that it

did), and if it employed a "negro man" (and the testimony affords an inference that it did), why might not the jury infer that it was that negro man who was, on the particular occasion in controversy, rolling the awning up or down? Under the circumstances in evidence, they might have concluded that the witnesses of the defendant were honestly mistaken; especially so, as the name of the particular negro man was not given.

In short, the court holds that it was properly a jury question as to whether the negro man was acting for the defendant, or upon his own responsibility, in his attempt to roll up or roll down the awning.

The general averments of negligence cover this phase of the case; and if he was acting for the defendant his act was not an independent, intervening cause of the injury, but, with the decayed condition of the awning, was a concurring, coefficient cause for which defendant was responsible.

While upon these considerations, as we have said above, the charge in question might properly have been refused, yet the court cannot be put in error for giving it.

And, for the same reasons, the court committed no error in refusing the general charge requested by the defendant, nor in refusing charge 2, to defendant.

Charge 2, given at plaintiff's request and covered by assignment of error 12a, states the law correctly, and is subject to none of the criticisms applied to it by appellant's counsel; and the court properly gave it.

It matters not with whom the contract of lease was made. The undisputed testimony shows that the defendant was in control of the store and conducting it. This shows that the court committed no error in refusing charge 8 requested by the defendant.

[Lewy Art Co. v. Agricola.]

Negligence may consist in the omission to act, as well as in acting. This is sufficient for the condemnation of charge 6, refused to defendant.

Charge M was properly refused, for an inherent misleading tendency, in the use of the word "agent" without coupling therewith the alternative "or servant." The two words "agent" and "servant," may have some elements in common, but they are not identical in meaning. The jury might have found from the evidence that the negro was defendant's servant, but not its agent; and while in law the defendant would have been responsible for its servant's act, yet, under the charge, the jury might have been misled to a finding for the defendant.

Charge F is palpably bad. It mistakes the compass of count 1, and was properly refused. The same criticism justly applies to charge G.

If the awning was in a decayed condition, to the knowledge of the defendant, and on that account fell when the negro attempted to lower or hoist it, it is immaterial that his act was negligent or not. This disposes of chage D, refused to defendant.

All of the grounds of the motion for a new trial, discussed in appellant's brief, are disposed of by what has been said and determined already in the course of this opinion, except that of excessive damages. Upon this question the testimony tends to show permanent injury and much pain and suffering; and in the light of this we cannot say that the verdict of $1,000 is excessive.

No reversible error having been shown, the judgment of the city court is affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.

[Wilhite v. Fricke.]

The foregoing opinion was prepared by Justice Denson, before his retirement as Associate Justice, and, having been adopted in consultation, it is now announced as the opinion of the court.

